```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF GEORGIA
                         ATHENS DIVISION

NATIONWIDE PROPERTY & CASUALTY   *
INSURANCE COMPANY and
NATIONWIDE AFFINITY INSURANCE    *
COMPANY,
                                 *
     Plaintiffs,                         CASE NO. 3:13-cv-47 (CDL)
                                 *
vs.
                                 *
JOHN JOSEPH O'NEILL and JESSICA
MARIE O'NEILL,                   *

     Defendants.                 *
_____
```

O R D E R

"In-laws" do not always get along, but acrimony rarely escalates to the point that a daughter-in-law sues her own father-in-law. Even rarer are cases in federal court arising from such disputes. But thanks to the possible existence of insurance coverage, this is one.

After a night on the town, John Joseph O'Neill and his daughter-in-law, Jessica Marie O'Neill, got in an altercation in the front seat of Mr. O'Neill's pick-up truck upon leaving a bar. Jessica sued her father-in-law in state court for personal injuries she allegedly suffered. In that action, Jessica alleges that Mr. O'Neill, while intoxicated, placed her in a headlock, hit her on the head, choked her, and shoved her out of his pick-up truck.

Mr. O'Neill is the insured on a homeowner policy issued by Plaintiff Nationwide Property & Casualty Insurance Company ("Nationwide P&C") and on an auto policy issued by Plaintiff Nationwide Affinity Insurance Company ("Nationwide Affinity") covering his pick-up truck.  Both insurers filed this declaratory judgment action seeking a ruling that their policies do not cover the claims asserted by Jessica and that the insurers therefore have no duty to indemnify or defend Mr. O'Neill for Jessica's claims.  Plaintiffs moved for judgment on the pleadings in the presently pending declaratory judgment action (ECF No. 14).  For the reasons explained in the remainder of this Order, the Court grants Plaintiffs' motion.

## JUDGMENT ON THE PLEADINGS STANDARD

After the pleadings are closed, a party may move for judgment on the pleadings based solely upon materials contained in those pleadings.  Fed. R. Civ. P. 12(c).  Judgment on the pleadings is only appropriate if the pleadings, when construed in favor of the non-movant, establish that the movant is entitled to judgment as a matter of law.  *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1273 (11th Cir. 2008).  In the present case, the two relevant insurance policies are attached as exhibits to Plaintiffs' Complaint and are incorporated by reference as part of the Complaint.  Moreover, Defendants admit that the attached policies are the applicable ones for this

action.  Therefore, the Court may consider those policies in making its decision.  The complaint in the underlying state court action has also been attached to the declaratory judgment Complaint as an exhibit and is incorporated by reference into the Plaintiffs' pleadings.  Defendants do not dispute that the attached state court complaint accurately states the claims for which coverage is sought.  Therefore, the Court may consider those factual allegations when ruling upon Plaintiffs' motion for judgment on the pleadings.[1]  In the following discussion, the Court examines the claims that Jessica asserts in the underlying

---

[1] Mr. O'Neill argues that in deciding the coverage question, the Court must also consider his version of what happened and whether coverage would exist if that version were true.  While Mr. O'Neill's argument may have some theoretical appeal, it does not apply here.  Under his version of the facts, Mr. O'Neill essentially argues that he would have no liability to Jessica.  It follows that if he has no liability to Jessica, there would be no duty to indemnify.  Mr. O'Neill thus has not alleged a set of facts which would allow him to prevail.  *See Palmer & Cay, Inc. v. Marsh & McLennan Cos.*, 404 F.3d 1297, 1303 (11th Cir. 2005) (internal quotation marks omitted) (explaining that it is appropriate to grant a motion for judgment on the pleadings when the non-movant "can prove no set of facts which would allow it to prevail").  It is true that if a plaintiff's factual allegations can be construed in a manner that arguably provides coverage, then an insurer has a duty to defend those claims even if the defendant may ultimately prevail. *See Elan Pharm. Research Corp. v. Emp'rs Ins. of Wausau*, 144 F.3d 1372, 1375 (11th Cir. 1998) ("[A]n insurer must provide a defense against any complaint that, if successful, might potentially or arguably fall within the policy's coverage.").  It is also true that "[w]hen the complaint on its face shows no coverage, but the insured notifies the insurer of factual contentions that would place the claim within the policy coverage, . . . the insurer has an obligation to give due consideration to its insured's factual contentions."  *Lawyers Title Ins. Corp. v. Stribling*, 294 Ga. App. 382, 385, 670 S.E.2d 154, 157 (2008) (alterations in original) (internal quotation marks omitted).  But Mr. O'Neill does not make factual contentions that would place the claim within the policy coverage.  He simply argues that he did not do what Jessica alleges, but he has not demonstrated how a jury could find in favor of Jessica on her claims and there be insurance coverage for the claims.

3

state court action along with the provisions in the two insurance policies to determine whether liability coverage exists for Mr. O'Neill for the claims asserted against him by his daughter-in-law. *See Auto-Owners Ins. Co. v. State Farm Fire & Cas. Co.,* 297 Ga. App. 751, 754, 678 S.E.2d 196, 199 (2009) (appropriate inquiry requires comparison of the complaint allegations with policy provisions).

## DISCUSSION

### I. Claims under the Homeowner Policy

#### A. The Policy Coverage

Mr. O'Neill's homeowner policy with Nationwide P&C provides personal liability coverage for "damages an insured is legally obligated to pay due to an occurrence resulting from negligent personal acts . . . ." Compl. Ex. D, Homeowner Policy at G1, ECF No. 1-4. "Occurrence" is defined in the policy as "bodily injury . . . resulting from an accident . . . ." *Id.* The policy does not define "accident," but the plain meaning of that term can easily be ascertained by use of the dictionary. *See W. Pac. Mut. Ins. Co. v. Davies,* 267 Ga. App. 675, 678, 601 S.E.2d 363, 367 (2004) ("In construing a contract of insurance to ascertain the intent of the parties, the court should give a term or phrase in the contract its ordinary meaning or common signification as defined by dictionaries, because they supply the plain, ordinary, and popular sense unless the words are

terms of art.")  "Accident" typically means "[a]n unintended and unforeseen injurious occurrence[.]"  Black's Law Dictionary 16 (9th ed. 2009); *see also* Webster's Third New International Dictionary 11 (1993) (defining accident as "an unforeseen unplanned event or condition").  Therefore, for coverage to exist under the Nationwide P&C homeowner policy, Jessica's claims must arise from an unintended and unforeseen event resulting from negligent personal acts.  Nationwide P&C contends that Jessica's injuries were the result of Mr. O'Neill's intentional acts, and therefore, no coverage exists under the terms of the policy.  Compl. ¶¶ 28-29.  Nationwide P&C also argues that the "intentional acts" and "criminal acts" exclusions apply here.  Compl. ¶¶ 30-31.  Those exclusions are as follows: There is no coverage for Personal Liability or Medical Payments to Others for bodily injury "caused intentionally by or at the direction of an insured, including willful acts the result of which the insured knows or ought to know will follow from the insured's conduct" or for bodily injury "caused by or resulting from an act or omission of any insured which are crimes pursuant to the Georgia Criminal Code."  Homeowner Policy at H1.  The fundamental question is whether Jessica alleges claims that arise from Mr. O'Neill's negligent unintentional conduct or whether the alleged conduct was clearly of an intentional nature.

5

B.  Intentional Tort Claims

Jessica claims Mr. O'Neill caused her injuries by placing her in a headlock, striking her in the head, choking her and ultimately pushing her out of his stationary truck. Compl. Ex. A, Underlying Compl. ¶¶ 15-19, 28-29, 35, ECF No. 1-1. Her complaint alleges that he did so intentionally and that his intent was "willful and malicious." *Id.* ¶¶ 28, 36, 38, 43. She asserts claims for assault, battery, intentional violent injury, intentional attempt to inflict violent injury, and intentional infliction of emotional distress. These intentional acts are neither accidental nor negligent. They clearly fall outside of any coverage provided by Mr. O'Neill's homeowner policy, and they are specifically excluded by the "intentional acts" exclusion in the policy. Homeowner Policy at H1.

C.  "Negligence" Claims

Jessica alleges that the conduct of Mr. O'Neill also amounted to negligence. She asserts that his intentional misconduct violates several criminal statutes and thus constitutes negligence per se. Significantly, the conduct that supports her negligence per se claim is the same exact conduct that gives rise to her intentional tort claims. As previously explained, that alleged conduct is clearly not covered under the homeowner policy. The fact that the same exact intentional misconduct may also constitute negligence does not change the

6

nature of the conduct for insurance coverage purposes. As the Georgia Supreme Court explained, "coverage need not be provided even though negligence is asserted as a concurrent cause of the harm suffered . . . because that harm clearly arose out of conduct that was within the scope of an insurance policy exclusionary clause." *Continental Cas. Co. v. H.S.I. Fin. Servs., Inc.*, 266 Ga. 260, 262, 466 S.E.2d 4, 7 (1996). It is the alleged conduct that determines whether coverage exists, and not the label placed on the cause of action. For the reasons previously explained, Mr. O'Neill's alleged intentional malicious misconduct is not covered under the homeowner policy whether that intentional misconduct gives rise to causes of action for intentional torts or negligent ones.

In addition to her negligence per se claim, Jessica also alleges that Mr. O'Neill was negligent when he "consumed excessive amounts of alcohol with complete disregard for his duty to act in a reasonable and prudent matter . . . when he knew, or should have known, it would lead him to cause violent acts." Underlying Compl. ¶¶ 56-57. She claims that this negligence "proximately caused" her injuries. *Id.* ¶ 58. But as explained by the Georgia Court of Appeals in *Dynamic Cleaning Service, Inc. v. First Financial Insurance Co.*, 208 Ga. App. 37, 38, 430 S.E.2d 33, 34 (1993), the Court in deciding an insurance coverage issue cannot ignore the intentional misconduct that was

7

allegedly caused by the negligent conduct.  In *Dynamic Cleaning,* an insurance policy excluded coverage for any claim based on assault and battery.  A claim was brought against the insured for negligently allowing an assault and battery to occur.  *Id*. The insured contended that the exclusion should not apply because the complaint alleged a claim for negligence.  *Id*.  The court found that "[a]lthough the complaint alleges that [the insured] was negligent in creating the circumstances which allowed the assault to occur, the injuries which give rise to the cause of action arose out of and were clearly based on the assault and battery."  *Id*.  Thus, "the fact that [the insured] may have negligently allowed the assault to occur d[id] not negate the effect of the exclusion."  *Id*.  Here, even if Mr. O'Neill were negligent in creating the circumstances which allowed the intentional torts to occur—that is, he negligently got drunk—the injuries giving rise to Jessica's causes of action arose out of and were clearly caused by the intentional misconduct that is not covered under the homeowner policy.

Finally, the Court finds Defendants' reliance upon *State Farm Fire & Casualty Co. v. Morgan,* 258 Ga. 276, 368 S.E.2d 509 (1988) misplaced.  Defendants rely on *Morgan* to support their proposition that even though Jessica clearly alleges that her injuries arose from intentional and malicious acts, a jury could find that Mr. O'Neill's intoxication negated his intent.

8

Defendants' argument ignores the fact that the coverage exclusion in *Morgan* differs from the exclusion here. In addition to the language that excludes coverage for bodily injury that is "expected or intended by the insured," *Morgan*, 258 Ga. at 276, 368 S.E.2d at 510, the policy here also excludes bodily injury "caused by or resulting from an act or omission of any insured which are crimes pursuant to the Georgia Criminal Code." Homeowner Policy at H1. This exclusion applies even if "the insured lacks the mental capacity to appreciate the criminal nature or wrongfulness of the act or omission or to conform the insured's conduct to the requirements of the law or to form the necessary intent under the law." Homeowner Policy at H1. This exclusion also applies even if the bodily injury "is of a different kind or degree than the insured knows or ought to know will follow from the insured's conduct" and "regardless of whether the insured is actually charged with, or convicted of a crime." *Id.* The Georgia courts have found policies with this type of language to be distinguishable from the policy in *Morgan*. *See Espanol v. Allstate Ins. Co.,* 268 Ga. App. 336, 339, 601 S.E.2d 821, 823-24 (2004) (finding *Morgan* not controlling and holding that voluntary intoxication did not make intentional injury exclusion inapplicable because policy excluded coverage for intentional and criminal acts even if the insured lacks the mental capacity to form the intent necessary

9

under the law). For some reason, the policy here only includes this broader exclusion language under the criminal acts exclusion and not the intentional acts exclusion. Although the intentional acts exclusion does exclude "willful acts the result of which the insured knows or *ought to know* will follow from the insured's conduct," the Court is not persuaded that the "ought to know" language is enough, standing alone, to distinguish *Morgan*. Mr. O'Neill presumably could argue that his intoxication deprived him of the ability of ascertaining what he *should have known*. But the Court does not need to decide that issue because it is clear that Mr. O'Neill's conduct would constitute a criminal act. *See e.g.* O.C.G.A. §§ 16-5-20 (simple assault); 16-5-23 (simple battery); 16-5-23.1 (battery); 16-5-24 (aggravated battery). This criminal act exclusion applies even if Mr. O'Neill's voluntary intoxication affected his intent. *Espanol,* 268 Ga. App. at 339, 601 S.E.2d at 823-24. Accordingly, *Morgan* is inapposite, and no coverage exists under Mr. O'Neill's homeowner policy.

**II. Claims under the Auto Policy**

In addition to his homeowner policy, Mr. O'Neill was insured under an auto policy with Nationwide Affinity. Compl. Ex. E, Auto Policy 1, ECF No. 1-5. That policy covers "damages for which [Mr. O'Neill is] legally liable as a result of an accident arising out of the: a) ownership; b) maintenance or

use; or c) loading or unloading" of his truck. Auto Policy at L1. The policy excludes coverage for loss "[c]aused intentionally by or at the direction of [Mr. O'Neill] . . . including willful acts the result of which [he] knows or ought to know will follow from [his] conduct." Auto Policy at P5. "[I]f no other insurance is available, then the exclusion[] . . . will apply only to amounts above the minimum limits of financial responsibility required by the State of Georgia as of the date of loss." Auto Policy at L5. Plaintiffs contend that there is no coverage under the auto policy because Jessica does not allege damages as a result of an accident arising out of the ownership, maintenance, or use of Mr. O'Neill's truck and because Mr. O'Neill's actions were intentional. Compl. ¶¶ 32-35.

It is clear that Jessica's claims do not arise from the ownership, maintenance or use of Mr. O'Neill's pickup truck. For Jessica's injuries to have resulted from the use of the truck, "there must be such a causal connection as to render it more likely that the injury 'grew out' of the use of the vehicle . . . There must be more of a connection between the use of the vehicle and the resulting injury than mere presence in the vehicle when the injury was sustained." *See State Farm Mut. Auto. Ins. Co. v. Myers*, 316 Ga. App. 152, 153, 728 S.E.2d 787, 788 (2012) (internal quotation marks omitted) (finding sexual

11

assault committed inside vehicle did not arise out of "use" of said vehicle); *Payne v. Twiggs Cnty. Sch. Dist.*, 269 Ga. 361, 363, 496 S.E.2d 690, 692 (1998) (finding physical attack committed inside school bus did not arise out of "use" of bus because bus was "only tangentially connected" to injuries as "situs of the attack").  Mr. O'Neill's truck was merely the "situs of the attack."  Jessica's claims clearly do not arise from the "use" of the truck.  Moreover, the fact that the attack culminated in Jessica being pushed out of the truck does not constitute "use" of the truck for insurance coverage purposes. "'Use[,]' while an admittedly elusive term, may be defined as 'to employ for some purpose.'"  *See Rustin v. State Farm Mut. Auto. Ins. Co.*, 254 Ga. 494, 495, 330 S.E.2d 356, 358 (1985) (quoting *The American Heritage Dictionary of the English Language*, 1980, Houghton Mifflin Co.) (finding employing car to transport insured to scene where he shot victim did not constitute "use" of car).  Mr. O'Neill did not employ the vehicle to injure Jessica.  Rather, it was his own alleged intentional misconduct that caused Jessica's injuries, including any that resulted when she was shoved out of the truck.

The facts here are also distinguishable from those cases in which someone suffered an injury while actually using the vehicle or a component of the vehicle.  *See Turner Transp. Co. v. Warner,* 168 Ga. App. 358, 359, 308 S.E.2d 845, 847 (1983)

(holding that an injury sustained while exiting a vehicle by way of a ladder attached to the vehicle and intended for that use was an accident "peculiar to the motor vehicle and intrinsically related to the vehicle itself" such that it would be deemed to have arisen from "use" of the vehicle for purposes of the former Georgia "no-fault" statute).  Here, Jessica was not using the vehicle or anything attached to the vehicle in any manner when she was attacked by Mr. O'Neill.  The altercation was not "peculiar to the vehicle" nor "intrinsically related to it."  The truck was simply the location of the altercation and had nothing but an incidental role in the injuries Jessica suffered.  Accordingly, no coverage exists under the auto policy.

CONCLUSION

Based on the pleadings, which establish the undisputed nature of Jessica's claims asserted in the underlying lawsuit and the provisions of the relevant insurance policies, it is clear that Plaintiffs' insurance policies do not provide coverage for the alleged claims.  Accordingly, Plaintiffs' Motion for Judgment on the Pleadings (ECF No. 14) is granted.  Any recovery by Jessica will have to come from her father-in-law's pocket and not his insurance companies'.

IT IS SO ORDERED, this 8th day of November, 2013.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE